IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALEX NGUYEN,                           §
                                       §
        Plaintiff,                     §
                                       §
v.                                     §        CIVIL ACTION NO. H-09-3011
                                       §
SYSCO FOOD SERVICES OF                 §
HOUSTON, INC.,                         §
                                       §
        Defendant.                     §

MEMORANDUM AND ORDER

_____Pending is Defendant's Motion for Summary Judgment (Document No. 18).  After carefully considering the motion, response, reply, and the applicable law, the Court concludes that the motion should be granted.

I.  Background

In this employment dispute, Plaintiff Alex Nguyen, an Asian male of Vietnamese descent, complains of wrongful termination due to race discrimination and/or retaliation, as well as violations of the Family Medical Leave Act ("FMLA"), and the Texas Commission on Human Rights Act ("TCHRA").

Plaintiff worked for Defendant Sysco Food Services of Houston, Inc. ("Sysco") as a night warehouse selector from July 2006 until

he was terminated on April 18, 2008.[1]  His direct supervisors were Rodney Hannes and Nelson Hill.[2]   Like all Sysco warehouse employees, Plaintiff was a member of the International Brotherhood of Teamsters (the "Union"), and was covered by a collective bargaining agreement.[3]

Plaintiff's job entailed receiving Sysco customer orders on a handheld device, picking up the cases corresponding to the orders, stacking the cases on a pallet, and dropping them off at the dock, where other employees loaded them onto trucks.[4]   Although the orders were assigned to selectors randomly,[5] the warehouse supervisors could assign to the selectors additional work that needed to be done.[6]  Plaintiff asserts that his additional work was harder than that assigned to other employees who were black and Hispanic.[7]   However, he was given additional pay for extra work

---

[1] Document No. 18, ex. A at 47-48, 138 [hereinafter Nguyen Depo."]; id., ex. C ¶ 6 [hereinafter "Hannes Aff."].

[2] Nguyen Depo. at 54; Hannes Aff. ¶ 3.

[3] Nguyen Depo. at 63-64.

[4] Id. at 48-50.

[5] Id. at 51.

[6] Id. at 67-68.

[7] Id. at 55-56, 67-69, 238-39; see also Document No. 1, ex. B ¶ 7.

2

orders filled.[8]  He also alleges that around September 2006, Hill made a comment about Plaintiff doing hard work because he is Asian, although Plaintiff never complained about that comment to Human Resources.[9]

Plaintiff did complain of the additional work to Sysco's ethics hotline on January 31, 2008.[10]  In response, Hannes called Plaintiff to his office to explain to him that he would "pick certain people that can do the [extra] work," including Plaintiff, because other employees tended not to work as hard.[11]  Plaintiff followed up directly with the same ethics hotline representative on February 4, 2008, to inform her that he was still being worked too hard.[12]  The same representative said she would investigate once more, but Plaintiff did not hear back.[13]  He never told the ethics representative that he thought his treatment was based on his race or national origin.[14]

---

[8] Nguyen Depo. at 64-66.  Plaintiff asserts he did not always get this pay when, for example, parts of an order were missing. Id. at 66-67.

[9] Id. at 54-58, 72-73.

[10] Id. at 155-56.

[11] Id. at 157, 159.

[12] Id. at 164-66.

[13] Id. at 168-69.

[14] Id. at 169.

Plaintiff sprained his shoulder on the job while picking up a case on April 13, 2008.[15] He stayed at work for his entire shift, but trained new employees instead of pulling orders.[16] He saw the company nurse the following morning, the 14th, did not go into work that day, and subsequently was assigned to "WorkLite" starting on the 15th, although he had requested that he be given light work at the warehouse due to its proximity to his home and the fact that WorkLite had no night shifts, in addition to his injury being "[n]ot that bad."[17]

Sysco's insurer denied coverage of Plaintiff's injury, so Plaintiff informed Sysco's nursing staff on April 15 that he wanted to take FMLA leave due to pain and his attempts to see doctors during the ensuing week.[18] He was told to submit documentation to support his request.[19] Pursuant to his WorkLite assignment, however, he was to report to WorkLite on Wednesday, April 16 through Friday, April 18.[20] He left work early on the 16th for a

---

[15] Id. at 193-94, 232.

[16] Id. at 195.

[17] Id. at 195-98, 202, 222, 243. Neither party explains what "WorkLite" is, although the name itself suggests that it involved light work assignments and, based on Plaintiff's testimony, it must have been at a location apart from the warehouse.

[18] Id. at 207, 221, 226-28.

[19] Id. at 206-07.

[20] Id. at 215-16.

4

doctor appointment, left work early on the 17th, and did not report to work on the 18th.[21]   He did not submit any documentation to support FMLA leave, although he had "doctor notes," and called on Friday, but received no reply.[22]

After Plaintiff's absence on the 18th, Hannes made the decision to discharge Plaintiff pursuant to Sysco's Absenteeism and Attendance Policy, due to the unexcused absences from WorkLite in combination with earlier attendance disciplinary actions.[23]   The policy assigned points in varying amounts to employees for late arrivals and unexcused absences; each time an employee accumulated in excess of nine disciplinary points within the most recent 26 weeks, a "violation" was recorded.[24]   Each successive "violation" in turn resulted in progressive disciplinary action as follows: (1) verbal warning; (2) written warning; (3) one-day suspension; (4) three-day suspension; and (5) discharge.[25]   Plaintiff had previously received warnings and suspensions due to "violations" on: (1) July 16, 2007; (2) September 10, 2007; (3) October 3, 2007;

---

[21] Id. at 215-16.  His doctor told him he could return to work whenever he felt better.  Id. at 232-33.

[22] Id. at 230-31.

[23] Id. at 138; Hannes Aff. ¶ 6; Document No. 18, ex. B-3.

[24] Hannes Aff. ¶ 4; Document No. 18, ex. B-1.

[25] Nguyen Depo. at 83-84.

and (4) January 2, 2008.[26]  His April 18 absence once again resulted in his having more than nine accumulated points, thereby leading to a fifth "violation," which called for Hannes to discharge Plaintiff under the progressive discipline rubric.[27]  Hannes was unaware of Plaintiff's FMLA request at that time.[28]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in November 2008, asserting claims of race and national-origin discrimination and retaliation; he was issued a right-to-sue letter on July 10, 2009.[29] He then filed this suit, alleging (1) Sysco's discriminatory termination of him; and (2) Sysco's retaliatory termination of him following his complaints about "unfair working conditions and harassment based on his race."  Sysco has moved for summary judgment on all claims.

## II.  Discussion

### A.  Legal Standard

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, discovery and disclosure materials on file, and

---

[26] Id. at 90-95.

[27] Hannes Aff. ¶ 6.

[28] Id. ¶ 9.

[29] Document No. 1, ex. B-A.

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other

hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

To withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 106 S. Ct. at 2552.  If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment must be granted.  Id.

B.   Race Discrimination

Plaintiff's claims of discrimination in substance assert disparate treatment, and are treated identically under both the TCHRA and Title VII.  Ysleta Indep. Sch. Dist. v. Monarrez, 177 S.W.3d 915, 917 (Tex. 2005) (stating that the TCHRA is intended to correlate with federal law in employment cases, so Texas courts look to federal law when applying it (citing Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003))).  Because Plaintiff

8

lacks direct evidence of discrimination, his claims are analyzed under the burden-shifting framework from McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Under this framework, Plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a *prima facie* case. To establish a prima facie case on such a theory, Plaintiff must show that: (1) he was a member of a protected group; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) he was replaced by someone outside his protected group or was treated less favorably than similarly situated employees outside of his protected group. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007); Ptomey v. Tex. Tech Univ., 277 S.W.3d 487, 492-93 (Tex. App.--Amarillo 2009, no pet. hist.); Winters v. Chubb & Son, Inc., 132 S.W.3d 568, 574 (Tex. App.-Houston [14th Dist.] 2004, no pet.). Adverse employment actions are limited to "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, and do not include those decisions by employers that arguably might have some tangential effect upon those ultimate decisions. McCoy, 492 F.3d at 559-60. After making this *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009). If the employer can articulate such a reason, the inference of discrimination falls

away, and the burden shifts back to the plaintiff to establish that his employer's proffered reason is merely a pretext for discrimination.  Id.[30]

Plaintiff has failed to make a *prima facie* case that when he was terminated he was treated less favorably than similarly situated employees outside his protected group.  "An employee is similarly situated if that employee was under 'nearly identical' circumstances."  Jones v. Wal-Mart Stores Inc., 306 F. App'x 81, 83 (5th Cir. 2009) (quoting Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 514 (5th Cir. 2001)).  Although Plaintiff asserts that he was singled out because he is Asian, and other warehouse employees were black or Hispanic, he has failed to point to any non-Asian employee with a similar attendance history who was not terminated.[31]  *See* Jones, 306 F. App'x at 83-84 (holding that

_____

[30] Plaintiff neither pleads nor offers proof or argument of a mixed-motive.  *See* Septimus v. Univ. of Houston, 399 F.3d 601, 607 & n.7 (5th Cir. 2005) (refusing to address possible applicability of mixed-motive analysis where "[t]he parties agree that this case was litigated and tried as a 'pretext' (rather than 'mixed-motive') retaliation case").

[31] Plaintiff asserts in his deposition that he felt the WorkLite assignment was discriminatory, because he had seen three or four injured black and Hispanic employees previously assigned to light duty at the warehouse instead of at WorkLite.  Nguyen Depo. at 198-99, 201-02, 208-09, 242-45.  However, Plaintiff's complaint alleges only causes of action arising out of his termination. Document No. 1, ex. B ¶ 21.  Regardless, he has failed to make a *prima facie* case regarding a WorkLite assignment; he presents no evidence that other employees not assigned to WorkLite suffered similar injuries, and in fact only references employees "around the warehouse with Band-Aid [sic] and stuff on their finger."  Nguyen Depo. at 245-46.  Moreover, this does not qualify as an adverse

the plaintiff failed to establish the fourth element of her *prima facie* case where she "failed to show that the disciplinary records of the non-terminated employees were nearly identical to her record"); *see also* <u>Okoye</u>, 254 F.3d at 514-15 (holding that other employees "who were not fired despite committing violations" were not similarly situated when they had committed different violations than the plaintiff).  In fact, Sysco proffers uncontroverted evidence that of its six warehouse employees terminated for violation of its Absenteeism and Attendance Policy in 2008, Plaintiff was the only Asian--the others were Hispanic, black, or white.[32]

Plaintiff's primary argument against summary judgment on his discrimination claim is, in effect, that the calculation of his attendance policy points was erroneously high, thereby showing the falsity of the reason for his termination.  This pretext argument applies at the later stage of the <u>McDonnell Douglass</u> analysis, and does not excuse Plaintiff's failure to make a *prima facie* case. Regardless, the argument lacks merit.  When Plaintiff received his first two "violations," in July and September, 2007, Hannes thought

---

employment action; employees were paid the same at WorkLite as employees on light duty at the warehouse.  <u>Id.</u>, ex. A at 245; *see* <u>Burger v. Cent. Apartment Mgmt., Inc.</u>, 168 F.3d 875, 879 (5th Cir. 1999) ("[A] purely lateral transfer is not an adverse employment action." (quoting <u>Doe v. Dekalb Cnty. Sch. Dist.</u>, 145 F.3d 1441, 1450 (11th Cir. 1998))).

[32] Document No. 18, ex. B ¶ 5 (van Egmond Aff.); <u>id.</u>, ex. B-2.

Plaintiff had accumulated 17 points on each occasion. Plaintiff asserts that Hannes erroneously had assigned six points to Plaintiff's tally in February and March, 2007. Even without the extra six points, however, Plaintiff still had 11 points each time, more than the number required for a "violation." Thereafter, the six points erroneously added in February and March dropped off his point total because the policy counted only points assessed during the most recent 26 weeks. Plaintiff has made no showing of any error in the counting of points that would have avoided the determinations of the additional "violations" charged against him in October 2007, January and April, 2008. Thus, Plaintiff has not shown error in the determination of his five "violations," which culminated in his discharge in April, 2008.

C. <u>Retaliation</u>

Plaintiff's retaliation claim, whether addressed under Title VII or the TCHRA, follows the same burden-shifting approach used in Title VII discrimination cases. <u>Strong v. Univ. Healthcare Sys., L.L.C.</u>, 482 F.3d 802, 805-06 (5th Cir. 2007); <u>Niu v. Revcor Molded Prods. Co.</u>, 206 S.W.3d 723, 730 (Tex. App.--Fort Worth 2006, no pet.) (stating that a burden-shifting analysis similar to that applied in wrongful discharge cases applies to retaliation claims under TCHRA). Under this approach, Plaintiff must first establish a *prima facie* case composed of the following elements: (1) that he

engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that there was a causal connection between his protected activity and the adverse action.  Pierce v. Tex. Dep't of Crim. Justice, 37 F.3d 1146, 1151 (5th Cir. 1994).  If he succeeds, the burden shifts to Sysco to proffer a legitimate, non-retaliatory reason for its actions, which then puts the burden on Plaintiff to show that Sysco's reasons are a pretext for retaliation.  To carry his ultimate burden, Plaintiff must show that the adverse action would not have occurred but for his protected activity.  Strong, 482 F.3d at 806.

Plaintiff's retaliation claim fails because he has not shown that Sysco's reason for his termination--violation of the attendance policy--was a pretext, as discussed above with respect to his discrimination claim.  Furthermore, as Sysco points out, Plaintiff fails to establish a prima facie case because he has offered no evidence that he engaged in a protected activity. Plaintiff testified in his deposition that he reported only unfair treatment to human resources in the two phone calls to the ethics hotline for which he alleges Sysco retaliated against him, but he did not state or report that he thought his race, nationality, or any other characteristic protected by Title VII was the reason for the treatment.[33]  See Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007) ("Under Title VII, an employee has

---

[33] Nguyen Depo. at 169, 175; Document No. 18, exs. A-10, A-11.

13

engaged in protected activity if she has 'opposed any practice made an unlawful employment practice under [42 U.S.C. § 2000e-3(a)].'" (quoting 42 U.S.C. § 2000e-3(a))); Brown v. United Parcel Serv., Inc., No. 10-60398, 2010 WL 5348552, at *3 (5th Cir. Dec. 28, 2010) ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." (citing, inter alia, Turner, 476 F.3d at 348-49)); see also Tex. Lab. Code Ann. § 21.055(1) (West 2006) (prohibiting retaliation against "a person who, under this chapter . . . opposes a discriminatory practice").  Sysco is therefore entitled to summary judgment on the retaliation claim.

D.   FMLA Violation

    Plaintiff generally alleges a violation of FMLA.  Construing his complaint liberally, he could be asserting either of two possible FMLA claims: interference with FMLA rights or retaliation. See Burris v. Brazell, 351 F. App'x 961, 963 (5th Cir. 2009). However, a prima facie case under the first claim requires a showing that someone involved in the plaintiff's termination was aware of his request for leave.  See id. (affirming grant of judgment on the pleadings and summary judgment dismissing the plaintiff's FMLA claim where she "produced no evidence that anyone involved in her termination was aware of her request for leave"). Here, as in Burris, Plaintiff has produced no evidence that anyone

14

at Sysco involved with his termination was aware of his request for leave; he contends only that he spoke to someone on its medical staff requesting leave.[34]   He offers no evidence that this staff member had anything to do with his termination.  On the other hand, the uncontroverted affidavit of Hannes establishes that he made the decision to terminate Plaintiff pursuant to the Absenteeism and Attendance Policy, and that he was unaware of any FMLA request by Plaintiff.[35]

Plaintiff's FMLA claim also fails if characterized as a retaliation-type claim.  A FMLA retaliation claim, like its Title VII counterpart, is analyzed under the McDonnell Douglas framework.  Burris, 351 F. App'x at 963 (citing Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir. 2001)).  As already discussed, even if Plaintiff were able to make a *prima facie* case of FMLA retaliation, he has failed to show that Sysco's legitimate, non-discriminatory reason for his termination is a pretext.  Sysco is therefore entitled to summary judgment on Plaintiff's FMLA claim.[36]

---

[34] *See* Nguyen Depo. at 206-07, 227-28.

[35] Hannes Aff. ¶¶ 6, 9.

[36] Plaintiff's complaint makes a bare reference to the "ADEA," and the Joint Report of the parties filed prior to the Scheduling Conference refers to the "ADA."  These appear to be random references, never developed nor argued by Plaintiff.  Nonetheless, Plaintiff failed to exhaust his administrative remedies with respect to any claim he might have intended under either Act. Plaintiff made no mention of age or disability discrimination on his EEOC charge, nor has he pointed to any other EEOC or state

III.   <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 18) is GRANTED, and Plaintiff Alex Nguyen's claims are DISMISSED WITH PREJUDICE.   The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this <u>28th</u> day of January, 2011.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

agency charge in which he asserted either claim.  *See* <u>Rhodes v. Guiberson Oil Tools Div.</u>, 927 F.2d 876, 878 (5th Cir. 1991) ("Employees cannot commence a civil action under the ADEA until 60 days after they have filed a charge with the EEOC alleging unlawful discharge." (citing 29 U.S.C. § 626(d))); *see also* <u>Dao v. Auchan Hypermarket</u>, 96 F.3d 787, 788-89 (5th Cir. 1996) (holding that filing a charge of discrimination with the EEOC or a state agency is a prerequisite to bringing suit under the ADA).

16